**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

COLUMBUS LIFE INSURANCE
COMPANY,

        **Plaintiff,**                    **Case No. 1:25-cv-91**

        v.                         **JUDGE DOUGLAS R. COLE**

SAI YU SU,

        **Defendant.**

## <u>OPINION AND ORDER</u>

Plaintiff Columbus Life Insurance Company sued Defendant Sai Yu Su, seeking a declaratory judgment that the insurance policy it issued to Su was void. (Compl., Doc. 1). Specifically, it alleges that Su made material misrepresentations in her application for the Policy, and that the Policy lacked an insurable interest from the outset. (*Id.* at #8–13). When Su did not respond, Columbus Life secured an entry of default against her, (*see* Doc. 13), and moved for entry of default judgment, (Doc. 15). In the latter, Columbus Life also asks the Court to allow it to retain the insurance premiums already paid to it. (*Id.*). After a delay, Su sought relief from the default, moving for leave to answer out of time. (Doc. 17). The Court conditionally granted that motion, stating that it would set aside the default, but only if Su paid Columbus Life $25,000 for the costs and attorneys' fees it incurred in litigating the delay and default, both of which resulted from her dilatory litigation conduct. (Docs. 30, 32). The Court further informed her that if she failed to do so, it would move forward with the motion for default judgment. (Doc. 32). The Court's deadline has passed, and Su

has not paid. So the Court will proceed with Columbus Life's Motion for Default Judgment (Doc. 15). For the reasons described below, the Court **GRANTS** the motion.

## BACKGROUND[1]

In January 2023, Su worked with a sales representative at third-party JC Marketing to apply for a $500,000 life insurance policy from Columbus Life. (Doc. 1, #3, 5, 7). During that process, she made various representations, including about her residency, income, and health. (*Id.* at #4). Several of those representations are relevant to the present action: (1) she arrived in the United States from China in 2015, (2) she had lived in New Jersey for the twelve months prior to the application, (3) she is a business owner, specifically of Sakura Japanese Steak Seafood House for five years, (4) her business ownership generated a specified annual income, and (5) she had a specified net worth. (*Id.*). As part of the application, Columbus Life required Su to undergo an in-person medical examination, which declared her to be in "good health." (*Id.* at #3). Lastly, Su listed her daughter as the beneficiary. (*Id.* at #4). Shortly thereafter, Columbus Life issued the Policy. (*Id.* at #6).

Columbus Life, however, had misgivings about the third-party agency, JC Marketing, generally, and eventually about Su's policy, specifically. (*Id.* at #11–12). According to Columbus Life, JC Marketing has been involved in other lawsuits for fraudulent procurement. (*Id.*). Given its concerns, in August 2024, Columbus Life

---

[1] When considering a motion for default judgment, the Court accepts as true all well-pleaded allegations except those relating to the amount of damages. *See Beaver v. Eastland Mall Holdings, LLC*, No. 2:20-cv-485, 2021 WL 1084610, at *2 (S.D. Ohio Mar. 22, 2021). So the Court's summary of the factual background rests on the allegations in Columbus Life's Complaint (Doc. 1).

sent Su a letter requesting additional information to verify the above representations. (*Id.* at #8). But Su never responded. (*Id.*). In December 2024, Columbus sent a follow-up letter, this time offering to rescind the policy in exchange for a refund of the premiums paid to date. (*Id.*). Columbus Life alleges that "[a]n individual purporting to sign Su's name accepted the delivery, but no one has cashed or deposited the check to date." (*Id.*).

Without any meaningful response, Columbus Life gave up on sending letters. Instead, on February 13, 2025, Columbus Life sued Su in this Court, seeking either rescission of the Policy or a declaratory judgment that the Policy was void ab initio. (*Id.* at #13–15). Specifically, Columbus Life alleges that a variety of her original representations were false, including, among others: (1) whether she ever resided in New Jersey, (2) whether she applied for the Policy or someone else did so in her name, (3) whether she underwent a medical examination and was truly healthy, (4) whether she was a business owner, and (5) whether she paid the premiums for the Policy. (*Id.* at #12). Columbus Life was particularly concerned that Su is not related to her named beneficiary, which would mean that the Policy lacked an insurable interest. (*Id.* at #12–13).

The Court detailed the intricacies of this case's procedural history in its previous Opinion and Order (Doc. 30, #175–77). Suffice it to say, Columbus Life encountered difficulties in serving Su, before eventually serving her on March 17, 2025. (Cummings Aff., Doc. 10-1, #55). That meant the deadline for Su to answer or

otherwise plead was April 7, 2025. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). But no answer was forthcoming.

So a little more than a month later, on May 29, 2025, Columbus Life applied for an entry of default, (Doc. 12), which the Clerk granted, (Doc. 13). And it then moved for default judgment on June 26, 2025. (Doc. 15). On July 16, however, Su finally appeared and moved to answer out of time. (Doc. 17). After full briefing on the matter, including back-and-forth about Su's counsel withdrawing, the Court issued its Opinion and Order conditionally granting Su's motion based on the payment of Columbus Life's costs and attorneys' fees incurred as a result of her dilatory conduct. (Doc. 30, #186). The Court informed Su that if she made the payment within the specified time, then the Court would set aside the default and deny default judgment. (*Id.*). Following that Opinion and Order, Columbus Life submitted documentation of its costs and attorneys' fees. (Doc. 31). Then, on March 2, 2026, the Court ordered Su to pay $25,000 (which was less than what Columbus Life had sought) on or before March 31, 2026. (Doc. 32). The Court further specifically advised her that: "[i]f she fails to do so, the Court intends to move forward with default judgment proceedings." (*Id.* at #209). That deadline has come and gone, and Su has neither paid nor communicated with the Court about any intention to pay.

In accordance with its previous Opinion and Order, then, the Court will proceed with Columbus Life's default judgment motion.

4

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides a two-step procedure for default judgments. A plaintiff seeking entry of default against a defendant must first show, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.* And at that point, the complaint's factual allegations concerning liability, but not damages, are taken as true. *Beaver*, 2021 WL 1084610, at *2; *see also* Fed. R. Civ. P. 8(b)(6). Next, unless the claim "is for a sum certain or a sum that can be made certain by computation," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Before granting default judgment, a court must satisfy itself of two things. First, the court must verify that it has both subject-matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2027). Second, the court must determine whether the facts in the complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) (Table) ("Default judgments would not have been proper due to the failure to state a claim against these defendants."). Said differently, to warrant default judgment, "the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (quotation omitted).

After confirming there is jurisdiction and a plausible claim, a court then "must conduct an inquiry" to establish the appropriate damages. *Beaver*, 2021 WL 1084610, at *2 (cleaned up). To do that, the court may either hold an evidentiary hearing, Fed. R. Civ. P. 55(b)(2), or it may determine damages without a hearing "if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," *Beaver*, 2021 WL 1084610, at *2 (cleaned up).

## LAW AND ANALYSIS

To begin, the Court concludes that Columbus Life has satisfied Rule 55(a)'s requirement for a default. Su failed to answer or otherwise plead by the deadline to do so, so Columbus Life obtained an entry of default. (Docs. 12, 13). While Su later moved to file an answer out of time, she failed to follow the condition necessary for the Court to grant that motion. (*See* Doc. 30, #186). Beyond that, Columbus Life's claim is arguably for a sum certain, so the Court perhaps need not proceed further in the analysis. Out of an abundance of caution, though, the Court elects to do so. Based on that analysis, the Court concludes that Columbus Life is entitled to default judgment under Rule 55(b)(2).

## A.    The Court Has Jurisdiction Over This Matter.

Jurisdiction poses no hurdle for Columbus Life. Start with subject-matter jurisdiction. The Court possesses diversity jurisdiction because (1) Columbus Life is a citizen of Ohio, (2) Su is a citizen of either New Jersey or New York, but certainly not Ohio, and (3) the matter in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

6

Turn then to personal jurisdiction. The Court also finds, based on the allegations in the Complaint, that it has personal jurisdiction over Su. As Columbus Life lays out in its motion, "she initiated an ongoing contractual relationship with Columbus Life in Ohio, agreed to make ongoing premium payments to Columbus Life in Ohio, and submitted numerous application materials to Columbus Life in Ohio." (Doc. 15, #96). These ongoing contacts suffice to show that Su purposefully availed herself of the state, such that she could "reasonably anticipate being haled into court there." *See Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006) (citation omitted).

**B.     Columbus Life Plausibly Alleged the Policy Lacked an Insurable Interest.**

With jurisdiction out of the way, the Court turns to the merits. Before doing so, though, the Court takes a brief detour to conduct a choice-of-law analysis. As this is a diversity matter, the Court applies the substantive law of Ohio (the state in which it sits), including its choice of law provisions. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This action sounds in contract—although regrettably, Columbus Life has failed to supply a written copy of the insurance policy, instead providing only the application for it. (*See* Doc. 1-1). In any event, when a contract lacks a choice-of-law provision, which it presumably does here considering Columbus Life does not assert one, Ohio law provides that the court should apply the law of the State with the most significant relationship to the parties and the contract. *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 209 (Ohio 2001). And, in ascertaining which State that is, the Court "should consider the place of contracting, the place of negotiation, [and]

the place of performance." *Id.* (citing Restatement (Second) of Conflicts § 188(2)(a)–(d) (Am. L. Inst. 1971)). Specifically in insurance disputes, Ohio courts look to "the local law of the state which the parties understood was to be *the principal location of the insured risk* during the term of the policy," unless another state has a more significant relationship to the specific dispute. *Craft v. W. Res. Mut. Cas. Co.*, 2004-Ohio-4105, ¶ 17 (4th Dist.) (emphasis added).

The Court agrees with Columbus Life that New Jersey "has the most significant relationship to the Policy." (*See* Doc. 15, #92 n.1). As Columbus Life notes, "the Policy was issued for delivery in New Jersey based on the representation that Su, as policy owner, was a New Jersey resident." (*Id.*). And that in turn means that the parties likely understood New Jersey as the "principal location of the insured risk." *Craft*, 2004-Ohio-4105, ¶ 17 (4th Dist.). Further, Columbus Life alleges that Su and the sales representative signed the Policy in New Jersey, (Doc. 1, #5), so any contracting and negotiation presumably occurred there. Thus, the Court finds that New Jersey law applies here.

Now turn to the merits. The Court focuses on Columbus Life's theory that the Policy is void ab initio because the Policy lacked an insurable interest from the beginning. (Doc. 15, #94–95). The primary case discussing insurable interests under New Jersey law is *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839 (N.J. 2019) (hereinafter, *Bergman*, which was the insured's name). In order to prevent gambling on strangers' lives via life insurance policies, states such as New Jersey require policyholders to have an insurable (read, financial) interest in the life

of the insured. *Id.* at 844. In words the New Jersey Supreme Court adopted from the U.S. Supreme Court: "[a] man cannot take out insurance on the life of a total stranger, nor on that of one who is not so connected with him as to make the continuance of the life a matter of some real interest to him." *Id.* (quoting *Conn. Mut. Life Ins. Co. v. Schaefer*, 94 U.S. 457, 460 (1877)). New Jersey further defines by statute who qualifies as having an insurable interest: (1) the individual themselves, (2) an individual with a "pecuniary advantage" in the continued life of the insured, and (3) a close relation. N.J.S.A. 17B:24-1.1(a). New Jersey refers to policies that lacks an insurable interest as stranger-originated life insurance (STOLI) policies, and it deems them void ab initio. *Bergman,* 208 A.3d at 841. Moreover, one indicator that a particular policy is a STOLI policy is that a stranger pays the premiums and funds the policy. *Id.* at 851.

Under New Jersey law, Columbus Life has adequately pleaded that the Policy here lacked an insurable interest. To start, Columbus Life alleged that Su represented on the application that she would pay the premiums, but the premiums came from third parties' bank accounts. (Doc. 1, #10). Further, Su supposedly named a person she claimed was her daughter as the beneficiary, but Columbus Life alleges that Su "materially misrepresented the beneficiary's familial relation to Su." (*Id.*). And Columbus Life seems to allege there was a fraudulent scheme between Su and JC Marketing, the third-party through which she applied for the Policy. (*Id.* at #11–12). True, there is some difficulty in identifying the exact scheme at play here, including how Su benefitted. But that is not all that surprising given that the action

is proceeding on a default. Despite that, the Court finds that Columbus Life provided sufficient factual allegations that the procured Policy lacked an insurable interest, and thus the Policy is void ab initio.

The more challenging question is exactly what remedy flows from that determination. More specifically, the question of whether Columbus Life should retain the premiums paid so far or whether it must refund those payments to Su. In *Bergman*, the New Jersey Supreme Court provided a framework for answering that question, which turned on some general equitable principles, but did not determine what would be appropriate in that case. 208 A.3d at 858. That court noted that the background rule in New Jersey is that when a contract is void, the district court is to leave the parties as they are. *Id.* In other words, Columbus Life would retain the premiums. The *Bergman* court further explained, however, that that rule has evolved over time, and that the default may give way to allow parties to recover when they are less culpable. *Id.* (quoting 8 Williston on Contracts § 19:80 (4th ed. 2019)). To that end, the court went on to favorably cite out-of-state cases where courts had ordered a premium refund when the party was "not to blame for the fraud." *Id.* at 858–59 (first citing *Ohio Nat. Life Assurance Corp. v. Davis*, 803 F.3d 904, 910–11 (7th Cir. 2015); and then citing *Sun Life Assurance Co. of Canada v. Conestoga Tr. Servs., LLC*, 263 F. Supp. 3d 695, 697, 704 (E.D. Tenn. 2017)). It described the relevant equitable considerations as follows:

> [T]rial courts should develop a record and balance the relevant equitable factors. Those factors include a party's level of culpability, its participation in or knowledge of the illicit scheme, and its failure to notice red flags. Depending on the circumstances, a party may be

> entitled to a refund of premium payments it made on a void STOLI policy, particularly a later purchaser who was not involved in any illicit conduct.

*Id.* at 859.

As the Court already noted, it possesses a limited record because this matter is proceeding on a motion for default judgment, as opposed to summary judgment, as was the case in *Bergman*. Despite the resulting evidentiary shortcoming, though, the Court concludes that Columbus Life is entitled to retain the premiums. First, as noted, the analysis starts with something of a presumption—the background rule is that the insurer may keep the premiums unless there are such equitable factors that outweigh the normal rule. *See id.* at 858. That, of course, weighs in favor of Columbus Life retaining the premiums. Second, this is not a case where the life insurance policy was later sold to a potentially unaware third party, as in *Bergman*. Rather, Columbus Life alleges that Su herself was part of the fraudulent scheme with JC Marketing. (Doc. 1, #10–12). Looking at the equitable factors, then, and treating the allegations in the Complaint as true (which the Court must do on default judgment *Beaver*, 2021 WL 1084610, at *2), Su is to blame for the fraud. That in turn means both that she is fairly culpable and that she would have direct knowledge of the illicit scheme. Because she is directly involved, the other listed considerations in *Bergman* are irrelevant. Furthermore, the Complaint also alleges that Su did not fund the Policy herself, and instead a third party did. (Doc. 1, #10). So, taking that as true, it is not at all clear why equity would demand she receive reimbursement for amounts she never paid.

On top of that, the Court has already noted its concerns with Su's litigation conduct and the way in which it has increased Columbus Life's fees and expenses in pursuing this action. That is another equitable factor that counsels against forcing Columbus Life to remit the policy premiums it has obtained to date. Putting all of that together, the Court concludes it is appropriate for Columbus Life to retain the premiums.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Columbus Life's Motion for Default Judgment (Doc. 15). Accordingly, it **DENIES AS MOOT** Columbus Life's Motion to Lift the Stay and Enter Default Judgment (Doc. 26). To that end, the Court **ORDERS** the Clerk to enter judgment against Su, and to **TERMINATE** this matter on the Court's docket.

**SO ORDERED.**

April 13, 2026
 **DATE**                                    **DOUGLAS R. COLE**
                                             **UNITED STATES DISTRICT JUDGE**

12